UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**OPINION & ORDER**

SUZETTE THOMAS, TIESHA ORTIZ, J.O.,
*and* JOSE ORTIZ,

Plaintiffs,

– against –

PATRICIA L. MARTIN-GIBBONS, ESQ.,
*Attorney*, DANA J. WILSON-HAYNES, VINOLA
WILSON, CARL JOSEPH HAYNES, ROBERT
D. MULROY, *Judge (Family)*, THE CHILDREN'S
LAW CENTER, *Legal Assistance*, THE CITY OF
NEW YORK, THE STATE OF NEW YORK, *and*
MARTHA SCHNEIDERMAN, ESQ.

Defendants.

19 Civ. 7695 (ER)

SHANEQUA S. ORTIZ *on behalf of J.B.O.*,

Plaintiff,

– against –

DANA J. WILSON-HAYNES, CARL J.
HAYNES, PATRICIA L. MARTIN-GIBBONS,
ESQ., MS. RITTER, MR. MONTGOMERY, THE
DEPARTMENT OF HEALTH, MARTHA
SCHNEIDERMAN, CYNTHIA LEE, DAWN
POST, KAREN SIMMONS, BROOKLYN'S
CHILDREN'S LAW CENTER, JUDGE ROBERT
MULROY, THE CITY OF NEW YORK, THE
STATE OF NEW YORK, *and* NEW YORK CITY
DEPARTMENT OF CORRECTION,

Defendants.

19 Civ. 7887 (ER)

RAMOS, D.J.:

    This case centers on a young boy, J.O., and the dispute between his father and
mother over who shall have custody over him.  In December 2018, a New York court
gave his father, Dana J. Wilson-Haynes, permanent custody and approved of his
relocation to California.  Now, his mother, Shanequa Ortiz of New Jersey, and maternal

grandmother, Suzette Thomas, maternal grandfather, Jose Ortiz, and maternal aunt, Tiesha Ortiz — all of New York — sue in this Court to have J.O. placed in their custody and for relief related to the long-running dispute between them and the family of Wilson-Haynes. The plaintiffs sue a collection of individuals and organizations involved with this dispute, including Wilson-Haynes, himself, his father, Carl J. Haynes of California,[1] his grandmother, Vinola Wilson of New York, his former attorney, Patricia L. Martin-Gibbons of New York, the New York-based organization that served as the court-appointed attorneys for J.O. during custody proceedings and its employees, the New York State judge that awarded custody to Wilson-Haynes, the City of New York, and the State of New York. Ortiz additionally sues the New York City Department of Health, two of its employees, and the New York City Department of Correction.

Now, each of the defendants moves to dismiss on a variety of grounds. For the following reasons, their motions are GRANTED in their entirety.

## I.    BACKGROUND

Shanequa Ortiz and Wilson-Haynes married in July 2012, while Ortiz was pregnant with J.O. Am. Compl. ("*Ortiz* Compl.") ex. C at 20, 21, *Ortiz v. Wilson-Haynes*, 19 Civ. 7887 (ER), Doc. 63; Wilson-Haynes Mot. to Dismiss at 4, *Ortiz*, Doc. 77. The couple separated shortly afterwards, in September 2012, and J.O. was born in April 2013. *Id.* Three months after his birth, a New York Family Court judge granted sole legal custody of J.O. to Ortiz and granted Wilson-Haynes "liberal visitation" rights. *Id.* at 20.

In September 2014, on a day he was visiting with his son, Wilson-Haynes allegedly punched J.O.'s maternal grandfather, Jose Ortiz, in the face and cursed at him. Am. Compl. at 17 ("*Thomas* Compl."), *Thomas v. Martin-Gibbons*, 19 Civ. 7695, Doc. 69-3. Although Ortiz received a temporary order of protection from the Bronx County

---

[1] According to Wilson-Haynes, Carl Haynes passed away in January 2020. 19 Civ. 7695, Doc. 84 at 2.

Family Court sometime later, his petition for a permanent order of protection was dismissed in November 2014. *See id.* at 19.

In December 2015, a New Jersey family court granted a divorce between Shanequa Ortiz and Wilson-Haynes. *Ortiz* Compl. ex. C at 21. The court granted custody to Ortiz in the final judgment of divorce. *Id.* Custody-related litigation continued, however, with defendant Judge Robert Mulroy of the Kings County Family Court being assigned to J.O.'s case in January 2016. Ortiz Opp. ("First Ortiz Opp.") ¶ 13, *Ortiz v. Wilson-Haynes*, 19 Civ. 7887 (ER), Doc. 81. The Children's Law Center was assigned by Judge Mulroy to represent J.O. in proceedings before him in February 2016. Notice of Mot. ex. A ¶ 4, Doc. 75.

Shanequa Ortiz alleges that Wilson-Haynes harmed J.O. during visits after the divorce. In particular, Ortiz alleges that J.O. had bruises and other marks on him after visiting with his father.[2] *See* First Ortiz Opp. ¶¶ 14–15. In a May 2016 letter to Judge Mulroy, Ortiz's lawyer at the time reported that J.O. was upset when Ortiz attempted to hand him to Wilson-Haynes for a visitation. *Ortiz* Compl. ex. C at 34–36. The attorney further reported that J.O. acted oddly after returning from the visitation and that she and Ortiz accordingly filed a police report, suspecting child abuse. *Id.* Ortiz further alleges that Wilson-Haynes exposed J.O. to foods to which he was allergic, forcing at least one emergency room visit. First Ortiz Opp. ¶ 38.

Litigation continued into 2017. During this time, the Children's Law Center acted as attorneys for J.O., representing his interests during the proceedings. Shanequa Ortiz alleges that each of the employees of the Law Center that are defendants engaged in misconduct during the court case. She alleges that attorney Dawn Post made frivolous applications to hold Ortiz in contempt and was biased in favor of Wilson-Haynes. First

---

[2] Between June 2015 and July 2017, Ortiz attempted to engage New Jersey's Department of Children and Families three times for unstated reasons. *Ortiz* Compl. ex. C at 31–33. The Department closed her case or denied services each time. *Id.*

Ortiz Opp. ¶¶ 25, 26.  Employee Cynthia Lee allegedly met with J.O. in violation of Ortiz's custodial rights.  *Id.* ¶ 28.  Attorney Sarah Lee allegedly criticized Ortiz in front of J.O. and distressed him with her questions.  *Id.* ¶ 29.  Ortiz makes no specific allegations against defendant Karen Simmons, an employee of the Children's Law Center.  Ortiz also accuses Wilson-Haynes' lawyer, Patricia Martin-Gibbons. of sending a "dangerous" process server to her home.  *Id.* ¶ 32.  Finally, Ortiz accuses Judge Mulroy of misconduct, alleging that he held *ex parte* conversations with judges of family courts in New Jersey when conflicts arose between proceedings in New Jersey and those in New York.  *Id.* ¶¶ 30, 31.

Shanequa Ortiz alleges that J.O. told her in July 2017 that his father planned to run away with him.  First Ortiz Opp. ¶ 20.  In an August hearing in Family Court, Ortiz told Judge Mulroy what J.O. had told her and of marks on J.O.'s arm, to which Judge Mulroy allegedly responded, "Ms. Ortiz, the father is requesting a whole month with his son and you WILL NOT have access to him, no phone number, no address, just maybe an email."  *Id.* ¶ 21 (emphasis in original).  Martin-Gibbons and Martha Schneiderman of the Children's Law Center moved to hold Ortiz in contempt for not producing J.O.  *See* First Ortiz Opp. ¶ 22; *Ortiz* Compl. ¶ 4.  Judge Mulroy granted the motion and remanded Ortiz to the custody of the New York City Department of Correction at Rikers Island for 24 hours.  First Ortiz Opp. ¶ 22.  While she was at Rikers, Ortiz alleges, she was injured by the negligence of correction officers.  In particular, she alleges that she strained her leg while sitting on a "disabled bench" and was ignored when she asked to be moved.  *Ortiz* Compl. at 14.  She alleges that she had difficulty walking after her release and was treated at an emergency room.  *Id.*

Shanequa Ortiz alleges she was again held in contempt in September 2017 for not producing J.O.  *Ortiz* Compl. ¶ 4.  While being transported to a holding cell, she alleges that she was handcuffed so tightly her arm turned blue and she felt dizzy.  Ortiz Opp. ("Second Ortiz Opp.") ¶ 19, Doc. 88.  She claims that she told the correction officer of

her discomfort, but that the officer did nothing.  *Id.* ¶ 20.  She alleges that her handcuffs were not loosened until another inmate intervened on her behalf to a captain.  *Id.*  She further alleges she was exposed to verbal sexual harassment from other inmates being transported, that she saw the other inmates stabbing each other on the bus, and that she was subjected to a strip-search, where she was "told to lift certain body parts to check for contraband in front of officers and other female inmates."  *Id.* ¶¶ 15–17.

Because of Ortiz's failure to produce J.O., Judge Mulroy awarded Wilson-Haynes temporary custody of his son.  After her release from Rikers, in September 2017, Shanequa Ortiz went to J.O.'s school and discovered that he had been discharged from the school by Wilson-Haynes.  First Ortiz Opp. ¶ 19.  She alleges that Wilson-Haynes signed J.O. up for health insurance and medical care in October by submitting documents bearing her signature.  *Id.* ¶ 24.

In late 2017 and early 2018, J.O.'s maternal relatives attempted to secure visitation rights for themselves.  In December 2017, Tiesha Ortiz, the sister of Shanequa, petitioned for visitation of J.O.  *Thomas* Compl., Doc. 69-2 at 17.  Suzette Thomas, J.O.'s maternal grandmother, likewise petitioned for visitation in January 2018.  *Id.* at 13.  Ortiz's petition was denied for lack of standing in April 2018.  *Id.* at 20.  Shortly after her petition was denied, Tiesha Ortiz confronted Wilson-Haynes' grandmother, Vinola Wilson, on the street.  *Id.*, Doc. 69-4 at 7.  Days after the confrontation, both Wilson-Haynes and his grandmother were granted orders of protection against Ortiz.  *Id.* at 2, 4, 9–12.  Thomas' petition for visitation was dismissed in August 2018 for failure to prosecute.  *Id.* at 14.

In October 2018, Wilson-Haynes petitioned for full custody of his son and permission to relocate to California.  *Ortiz* Compl. ¶ 1; *Thomas Compl*, Doc. 69-3 at 23.  During those proceedings, in November 2018, Shanequa Ortiz became aware of a September 2017 birth certificate for J.O. allegedly requested by Martin-Gibbons and issued by the New York City Department of Health that omitted Ortiz's name as mother

of J.O.  Second Ortiz Opp. ¶ 23.  She spoke with defendants Ritter and Montgomery at the Department of Health, both of whom allegedly claimed that Ortiz was not J.O.'s mother and declined to update their records based on Ortiz's requests.  *Id.* ¶¶ 24–26.  In December, Judge Mulroy granted Wilson-Haynes full custody of J.O. and approved of his move to California.  *Ortiz* Compl. ex. C at 28, 29.

Meanwhile, in November 2018, Shanequa Ortiz sued Martin-Gibbons, Wilson-Haynes, and Carl J. Haynes in New York Supreme Court.  Shepps Aff. ex. C, Doc. 76.  In that complaint, Ortiz alleged that Martin-Gibbons committed fraud by filing the September 2017 birth certificate that did not list her as J.O.'s mother.  *Id.* at 2.  She also alleges that these defendants defamed her and inflicted mental and emotional distress on her, injuries identical to those she alleges in this case.  *Compare id.* at 2 *with Ortiz* Compl. at 6.  In a decision and order dated June 26, 2019, Justice Jaffe dismissed the complaint in its entirety against Martin-Gibbons, finding that the complaint "appears to be an improper attempt to relitigate or collaterally attack the Family Court decision."  Shepps Aff. ex. D at 3.[3]

In their lawsuit filed before this Court on August 16, 2019, Tiesha Ortiz, Suzette Thomas, and Jose Ortiz allege violations of their First, Fifth, Seventh, and Eleventh Amendment rights, as well as their human and civil rights.  They additionally allege counts of "conspiracy, malicious behavior, slander of name, alleged criminal charges, alienation of the minor child J.O., illegal relocation of . . . J.O., illegal custody, transfer, Parental Kidnapping," and violations of 18 U.S.C. §§ 241, 242.  For relief, they ask for $190 million in damages and "declaratory relief for plaintiff J.O."

---

[3] It is unclear whether this order applied to Wilson-Haynes and Haynes, as well.  Justice Jaffe wrote, "Accordingly, it is hereby ORDERED, that defendant Martin-Gibbons's motion to dismiss is granted, and the complaint is severed and dismissed against her in its entirety."  Shepps Aff. ex. D at 3.  A review of the case's docket, however, lists the case as disposed on the same day as Justice Jaffe's order.  *See* Docket, *Ortiz v. Martin-Gibbons*, No. 101742/2018 (N.Y. Sup. Ct. filed Mar. 14, 2019).  Neither the defendants in this case nor the Supreme Court docket suggest any further motions were filed.

In her lawsuit filed on August 22, 2019 and originally assigned to Judge Engelmayer,[4] Shanequa Ortiz alleges violations of her First, Fourth, Fifth, Sixth, Eighth, Eleventh, and Fourteenth Amendment rights, as well as her "civil and constitutional rights to motherhood and human rights."  She additionally alleges that the defendants' actions "eras[ed] [a] mother's existences from her child," caused "mental and emotional distress," "defamed her character," and amounted to "torture" and "wrongful incarceration."  She asks for J.O. to be returned to her, for millions of dollars in damages from each of the defendants, and miscellaneous declaratory and injunctive relief.

All defendants in both cases have been served with the plaintiffs' complaints except for Mr. Montgomery in the *Ortiz* case.  The Court held a pre-motion conference in both cases on October 21, 2019, at which attorneys for all defendants except for Montgomery, Wilson-Haynes, Wilson, and Haynes appeared.  At that conference, it granted all defendants leave to file motions to dismiss.  Since then, all defendants except for Haynes, Wilson, and Montgomery have moved to dismiss their respective cases for lack of subject matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Docs. 73 (Mulroy and State of New York moving under Rule 12(b)(1) only), 74 (Children's Law Center and employees), 75 (Martin-Gibbons), 76 (Wilson-Haynes, *pro se*), and 82 (City of New York) in *Thomas*, 19 Civ. 7695; Docs. 74 (Mulroy & State of New York moving under Rule 12(b)(1) only), 75 (Children's Law Center and employees), 76 (Martin-Gibbons), 77 (Wilson-Haynes, *pro se*), and 82 (City of New York, New York Department of Health, New York Department of Correction, and Ritter) in *Ortiz*, 19 Civ. 7887.

In November 2019, Shanequa Ortiz made a motion for the Court to order Wilson-Haynes to allow J.O. to attend a funeral in New Jersey, which the Court denied.  Doc. 70. In April 2020, Ortiz moved for an order of protection against Wilson-Haynes and

---

[4] The case was reassigned to this Court as related to the *Thomas* case on September 10, 2019.

employees of the Children's Law Center based on conduct by the Law Center during a proceeding related to J.O. in New Jersey.  Doc. 98.

## II.      STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits . . . ."  *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not draw inferences from the complaint favorable to the plaintiff.  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Chrisite's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  The Court is not required, however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Finally, special considerations counsel in favor of relaxed pleading standards for *pro se* plaintiffs. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (noting that *pro se* complaints, "however inartfully pleaded, must be held to less stringent standards" (internal quotation marks omitted)). Accordingly, in adjudicating the motions to dismiss, the Court looks beyond the complaints, considers the factual allegations contained in the plaintiffs' opposition papers, *see Long v. Lafko*, 254 F. Supp. 2d 444, 446 (S.D.N.Y. 2003), and interprets the totality of allegations in their papers to raise the strongest claims they suggest, *see Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir. 2006). As the Second Circuit has observed, a liberal construction of *pro se* pleadings is especially important when dealing with civil rights complaints, like these. *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). "However, eve*n pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks and emphasis omitted).

## III.    J.O.'S LACK OF REPRESENTATION

The Court first dismisses any claims made on J.O.'s behalf. In a federal lawsuit, "parties may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. This right to proceed personally — or *pro se* — does not extend to the case where a litigant seeks to represent the interest of another. *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). "The choice to appear *pro se* is not a true choice for minors who under state law cannot determine their own legal actions." *Id.* (internal citation removed). As J.O. was born in 2013 and is indisputably a minor, all claims brought on his behalf are dismissed without prejudice until such time as they are brought by an attorney. *Id.* at 62.

9

IV.     INJUNCTIVE RELIEF
        REQUESTING CUSTODY OF J.O.

The Court construes Ortiz's complaint as seeking the return of J.O. through one of two avenues:  (1) by reversing Judge Mulroy's December 2018 order granting Wilson-Haynes full custody of J.O. and approving of the relocation of the pair to California or (2) by having this Court award custody of J.O. to Ortiz as part of separate actions between them and one or more of the defendants.  This Court, however, has no jurisdiction to issue either decree.

*First*, the *Rooker-Feldman* doctrine bars this Court's review of Judge Mulroy's state court decision.  *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  "Together, those cases established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (internal quotation omitted).  To bar a suit under this doctrine, the Court must find four requirements to have been met:  "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced."  *Id.*

Each of these requirements are met here.  Ortiz lost in state court when Judge Mulroy awarded full custody of J.O. to Wilson-Haynes.  The injury she complains of — the loss of the custody of J.O. — is directly caused by Judge Mulroy's order.  By complaining of the behavior of Judge Mulroy, alleged injustices in his court's procedures, and errors in his judgment by awarding custody to Wilson-Haynes, Ortiz is asking this Court to review and reject Judge Mulroy's judgment.  Finally, Judge Mulroy's judgment, being made eight months before the filing of Ortiz's federal complaint in this Court, was

rendered before the proceedings in this Court commenced.  Accordingly, the Court is without jurisdiction to consider and reverse Judge Mulroy's decision.[5]

*Second*, the domestic relations exception to federal jurisdiction bars the Court from issuing any independent decree concerning the custody of J.O.  In *Ankenbrandt v. Richards*, the Supreme Court reaffirmed that an implicit exception to the diversity jurisdiction statute, 28 U.S.C. § 1332, has "divested the federal courts of power to issue divorce, alimony, and child custody decrees."  504 U.S. 689, 703 (1992); *accord Deem v. DiMella-Deem*, 941 F.3d 618, 622 (2d Cir. 2019), *cert. denied*, No. 19-1111, 2020 WL 2515571 (U.S. May 18, 2020).  The Second Circuit has articulated a related domestic relations abstention doctrine, where a court may abstain from exercising jurisdiction over cases raising questions of federal law that present "matrimonial issues or issues on the verge of being matrimonial in nature" if "there is no obstacle to their full and fair determination in state courts."  *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990); *accord Deem*, 941 F.3d at 625.

Because Ortiz asks for this Court to issue a custody decree regarding J.O., her claims, to the extent they are based on state law and invoke the Court's diversity jurisdiction, are barred by the domestic relations exception.  *See Ankenbrandt*, 504 U.S. at 703; *Deem*, 941 F.3d at 622.  To the extent her claims are based on federal law, the Court declines under the domestic relations abstention doctrine to exercise federal question jurisdiction because, as the long record of custody proceedings before Judge Mulroy shows, "there is no obstacle to [her claims'] full and fair determination in state courts."  *Am. Airlines*, 905 F.2d at 14.[6]

---

[5] To the extent the *Thomas* plaintiffs seek a review of Judge Mulroy's decisions denying Tiesha Ortiz and Thomas visitation rights, the Court dismisses their claims under the *Rooker-Feldman* doctrine, as well.

[6] The Court does not construe the *Thomas* complaint to make any requests for a child custody order on behalf of Thomas, Tiesha Ortiz, or Jose Ortiz.  To the extent, however, that there may be a request for a child custody order based on federal law not otherwise dismissed through the dismissal of J.O. as a plaintiff, the Court declines jurisdiction to hear it under the domestic relations abstention doctrine.  And to

## V.     CLAIMS SEEKING DAMAGES

Having dismissed all claims for injunctive relief in both lawsuits, the Court now turns to claims for damages.

### A.  Immunity

The State of New York, Judge Mulroy, the Children's Law Center, and the Law Center's employees all enjoy some form of immunity from the claims of damages brought by the plaintiffs.

*First*, the State of New York and Judge Mulroy acting in his official capacity enjoy sovereign immunity.  "The Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it."  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015).  The State of New York has not waived its sovereign immunity in cases like these; nor has Congress abrogated that immunity.  *See Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019). Accordingly, all claims for damages against the State of New York and Judge Mulroy acting in his official capacity are dismissed.  *See id.*

*Second*, claims against Judge Mulroy in his individual capacity are dismissed because he enjoys absolute judicial immunity.   "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991); *Forrester v. White*, 484 U.S. 219, 225–26, (1988)).  "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the

---

the extent these plaintiffs seek to bring a claim under state law through the Court's supplemental jurisdiction, the Court declines jurisdiction because the Court has dismissed all of the *Thomas* plaintiffs' federal claims.  28 U.S.C. § 1367(c)(3).  As discussed below, the *Thomas* plaintiffs may not invoke the Court's diversity jurisdiction.

parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 210

(quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).

The claims against Judge Mulroy clearly meet this bar.  All allegations against the judge are related to actions he took in his courtroom, including how he addressed the litigants before him, the rulings he made, and how he made them.  He was acting in his judicial capacity at all relevant times and so is immune from the lawsuits brought against him by both Ortiz and her relatives.  *Cf. Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019), *cert. denied*, No. 19-1111, 2020 WL 2515571 (U.S. May 18, 2020) (finding that judge that issued temporary orders of protection in a child custody suit was acting in her judicial capacity).

*Third*, the Children's Law Center and its employees enjoy quasi-judicial immunity.  "Absolute immunity may attach to a non-judicial officer where that individual serves as an 'arm of the court,' or acts as an 'integral part[ ] of the judicial process.'" *Holland v. Morgenstern*, No. 12 Civ. 4870 (ARR) (VVP), 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)).  In New York, courts have regularly found that attorneys for children in custody proceedings (called "law guardians" until 2010, N.Y. Fam. Ct. Act § 242) enjoy quasi-judicial immunity.  *See Bey v. New York*, No. 11 Civ. 3296 (JS) (WDW), 2012 WL 4370272, at *9 (E.D.N.Y. Sept. 21, 2012) (collecting cases).

All of the plaintiffs' allegations against the Children's Law Center arise out of their court-appointed representation of J.O. during family court proceedings.  Accordingly, all claims against them are dismissed.  *See, e.g.*, *Yapi v. Kondratyeva*, 340 F. App'x 683, 685 (2d Cir. 2009) (finding that the Children's Law Center and its employees are entitled to quasi-judicial immunity).

### B.  Federal Claims

The plaintiffs' primary federal claims are brought under 42 U.S.C. § 1983.  The *Thomas* plaintiffs attempt to bring claims under 18 U.S.C. §§ 241, 242, which criminalize the deprivation of constitutional rights by any person under the color of law, and the Parental Kidnaping Prevention Act of 1980, 28 U.S.C. § 1738A.  These statutes, however, do not provide private rights of action.  *See Bender v. Gen. Servs. Admin.*, No. 05 Civ. 6459 (GEL), 2006 WL 988241, at *1 (S.D.N.Y. Apr. 14, 2006) (addressing 18 U.S.C. §§ 241, 242); *Thompson v. Thompson*, 484 U.S. 174, 187 (1988) (addressing the Parental Kidnaping Act).  Accordingly, these claims are dismissed.

The Court will proceed in its analysis of the § 1983 claims by defendant, first starting with the individual private defendants —Wilson-Haynes, Wilson, Haynes, and Martin-Gibbons — then moving to the individual governmental defendants — Ritter and Montgomery — and concluding with the claims alleged against the City of New York.[7] As discussed above, the other defendants enjoy immunity from suit.

#### 1.  Claims Against the Individual Private Defendants

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"  *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (internal quotations omitted).  "The Supreme Court has explained that 'merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge.'"  *Yapi v. Kondratyeva*, 340 F. App'x 683, 684 (2d Cir. 2009) (quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)).

---

[7] As both the New York City Departments of Health and Corrections are New York City agencies, they are non-suable entities and all claims against them are dismissed.  *See Johnson v. Dobry*, 660 F. App'x 69, 72 (2d Cir. 2016) (citing N.Y. City Charter ch. 17, § 396 and *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("The district court correctly noted that the NYPD is a non-suable agency of the City.")).

At best, the complaints in this case allege that the non-governmental defendants — Wilson-Haynes, his father, his grandmother, and his attorney, Martin-Gibbons — violated the plaintiffs' constitutional rights by appearing and winning in New York family court or on their own initiative. Neither theory is sufficient to show state action on their part, and, accordingly, all claims brought under § 1983 are dismissed against these defendants.

### 2. *Claims Against the Individual Governmental Defendants*

As the Court interprets her complaint, Ortiz alleges that she confronted Ritter and Montgomery, employees of the New York City Department of Health, with a copy of her son's allegedly fraudulent birth certificate. They asked Ortiz if J.O. was adopted and allegedly said that Ortiz was not J.O.'s mother. They then were allegedly rude to her and refused to provide any help to her in further investigating the birth certificate.

These allegations do not come close to stating a claim for relief. It is true that parents "have a constitutionally protected liberty interest in the care, custody and management of their children," under the Fourteenth Amendment. *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999).[8] "As a general rule, therefore, before parents may be deprived of the care, custody or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order permitting

---

[8] The plaintiffs additionally allege violations of their rights under several other amendments to the Constitution, but none can support a valid claim. The First Amendment claims must be dismissed because allegations concerning the "right to intimate association vis-à-vis parent–child relationship [are analyzed] under the principles of substantive due process rather than the First Amendment." *Licorish-Davis v. Mitchell*, No. 12 Civ. 601 (ER), 2013 WL 2217491, at *6 (S.D.N.Y. May 20, 2013). As no federal entity is implicated in the plaintiffs' complaints, neither the Fifth nor the Seventh Amendments support a claim. *See Phillips v. City of New York*, 453 F. Supp. 2d 690, 721 (S.D.N.Y. 2006). Fourth Amendment claims alleging improper removal from a parent's care may only be brought by a child. *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2011) ("A Fourth Amendment child-seizure claim belongs only to the child, not to the parent."), *reh'g* en banc *denied*, 681 F.3d 122, *cert. denied*, 568 U.S. 1150 (2013). Given that J.O. has been dismissed as a plaintiff, all related Fourth Amendment claims are dismissed, as well. The Sixth Amendment, by its terms, is only implicated in criminal matters, not civil matters like this one. *See* U.S. Const. amend. VI ("In all *criminal* prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .") (emphasis added). The Eleventh Amendment applies only to states, not municipalities like the City of New York, and so does not support a claim here. *See Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 280 (1977).

removal—must be accorded to them." *Id.* Furthermore, families "have, in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state." *Id.* at 600 (internal quotation marks and citation removed).

Even assuming for the sake of argument that an improper change to a child's birth certificate could implicate rights guaranteed under the Fourteenth Amendment, nothing Ritter and Montgomery are alleged to have done implicate those interests. They are not alleged to have wrongfully changed the birth certificate at all; rather, they declined to help Ortiz fully investigate what had happened. And, even if the complaint could be construed to implicate Ritter and Montgomery in the changing of the birth certificate, Ortiz does not allege how the changed birth certificate impacted her ability to raise, care for, or be with J.O.; Ortiz's complaint squarely lays the blame for her loss of J.O. at the feet of Wilson-Haynes and Judge Mulroy. Accordingly, the claims against Ritter and Montgomery are dismissed for failure to state a claim.[9]

### 3.   *Claims Against the City of New York*

The Court now turns to Ortiz's claims of violations of her Fourth and Eighth or Fourteenth Amendment rights while held at a facility on Rikers Island.[10] Although the Court concludes that Oritz fails to state a claim related to these allegations, it will give her an opportunity to amend her complaint as to these claims.

The City of New York may not be held liable for the actions of its employees solely because it employed them. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691

---

[9] Furthermore, the plaintiffs in both cases fail to plead a case that either defendant should be liable due to a conspiracy to deprive the plaintiffs of any right. The complaints do not allege any factual basis for an agreement among the co-defendants or specifics regarding the contours of any conspiracy. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague or general allegations that defendants have engaged in a conspiracy to deprive Plaintiff of constitutional rights are properly dismissed.").

[10] For the reasons described above, there is no underlying constitutional deprivation related to the actions of Ritter or Montgomery — preventing liability from lying with the City, *see Hardy v. City of New York*, 732 F. Supp. 2d 112, 145 (E.D.N.Y. 2010), nor is there any proper claim of conspiracy to deprive either set of plaintiffs of their rights.

(1978). Rather, "[i]n order to establish municipal liability, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation omitted). Although a plaintiff may use circumstantial proof of such a custom, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Id.* (internal quotation omitted).

     *First*, any claims alleged under the Fourth Amendment based on Ortiz's strip-search must be dismissed. The Supreme Court has held that jails may require all inmates entering a correctional institution to undergo a strip search requiring them to expose their body and lift parts of their anatomy during the search — irrespective of the severity of their alleged offense. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 339 (2012). Furthermore, the presence of others during the search creates no independent constitutional violation. *See, e.g.*, *Vaughn v. Strickland*, No. 12 Civ. 2696 (JPO), 2013 WL 3481413, at *5 (S.D.N.Y. July 11, 2013) (collecting cases and observing "that strip searches of prisoners in the presence of other inmates and staff is not constitutionally defective, especially in light of legitimate security concerns" (internal quotation omitted)). This is exactly the procedure Ortiz alleges she underwent. Accordingly, her claims on this point are dismissed.

     *Second*, Ortiz's claims arising from her first period in custody — where she alleged she was injured by an uncomfortable bench that strained her leg — must also be dismissed. It is unclear whether Ortiz was held in civil or criminal contempt, and therefore whether she was protected by the Eighth Amendment's bar against cruel and unusual punishment or the Fourteenth Amendment's guarantee to due process. *See, e.g.*, *Qader v. New York*, 396 F. Supp. 2d 466, 470 (S.D.N.Y. 2005) (analyzing conditions of confinement claim for criminal contemptor under Eighth Amendment); *Fusco v. Cty. of Putnam, New York*, No. 15 Civ. 8132 (NSR), 2018 WL 1889070, at *5 n.3 (S.D.N.Y. Apr. 18, 2018) (analyzing conditions of confinement of civil contemptor under Fourteenth

Amendment).  In either case, there is both an "objective" and a "subjective" prong to the analysis of whether an inmate's conditions of confinement are unconstitutional.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

The objective prong asks whether the conditions of which the inmates complain, "either alone or in combination, pose an unreasonable risk of serious damage to [their] health, which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (quotation and internal citation omitted).  This prong is identically analyzed under the Eighth and Fourteenth Amendments.  *See id.*  The subjective prong, however, differs slightly between the two Amendments.  Under the Eighth Amendment, the inmates must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 32 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  The Fourteenth Amendment requires a less stringent showing — only that the official "knew, *or should have known*, that the condition posed an excessive risk to health or safety." *Id.* at 35 (emphasis added).

Even under the looser standard of the Fourteenth Amendment, Ortiz fails to state a claim for unconstitutional conditions of confinement.  Under the objective prong of this analysis, Ortiz fails to allege that the strain to her leg, even though it allegedly caused her to walk in crutches for a time, violated "contemporary standards of decency." *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995).  Indeed, Ortiz does not allege how the bench — through its construction, for example, or how she was secured to it — harmed her leg at all.  Furthermore, she does not allege that any correction officer, much less the City itself, knew or should have known of the danger the bench posed to her. *Darnell*, 849 F.3d at 35.  Although she alleges that she "kept informing [correction officers] about the disabled bench," she does not allege that she told them of the risk to her health that the bench posed, assuming it posed one at all.

Furthermore, even if Ortiz had properly alleged a constitutional violation by the correction officers, she has failed to allege a violation by the City, the defendant here. She has not alleged that the danger of the bench was the result of any policy or practice of the City.  Absent any such allegation, this claim against the City must be dismissed.

*Third*, Ortiz fails to allege that the tightness of her handcuffs in September rises to the level of excessive force.  Under both the Eighth and Fourteenth Amendment, a plaintiff must show that the force used against her by a correction officer was "objectively unreasonable."  *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 2473 (2015).[11]  "There is a consensus among courts in [the Second Circuit] that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort."  *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (collecting cases); *see also Campbell v. Hanson*, No. 17 Civ. 1024 (ALC), 2019 WL 2717691, at *4 (S.D.N.Y. June 28, 2019) (stating that "an alleged injury more severe than temporary bruising or discomfort" is needed to constitute excessive force).

In this case, Ortiz does not allege that she suffered any injury beyond her "arm turning blue and feeling dizzy."  She does not allege for how long she was handcuffed or that she suffered lasting damage from the handcuffs after they were removed.  Without more detail of the severity of her injuries, her excessive force claim cannot survive.  *Cf. Simpson v. Saroff*, 741 F. Supp. 1073, 1078 (S.D.N.Y. 1990) (finding allegations of "swollen and bleeding wrists from the tight handcuffs, as well as a faintly detectable scar on her left wrist" sufficient to support a claim of excessive force).

Additionally, as with her other claims, her failure to allege any policy or practice on the part of the City is fatal to this claim, even if she had properly alleged an underlying constitutional deprivation.  Although, she does cite in her opposition papers to

---

[11] The Eighth Amendment contains a subjective prong to this analysis, as well.  *See Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009).  Because the Court finds that Ortiz fails to meet the objective prong, however, it need not address whether she has met the subjective prong in the event that her claims are properly governed by the Eighth Amendment, rather than the Fourteenth.

a number of lawsuits filed against the City and news reports detailing claims of excessive force, they are insufficient to properly allege a policy or practice that caused her injuries as "none resulted in an adjudication of liability." *Walker v. City of New York*, No. 14 Civ. 808 (ER), 2015 WL 4254026, at *9 (S.D.N.Y. July 14, 2015).

For these reasons, Ortiz's claims against the City related to her detention at Rikers Island are dismissed.[12] The Court does not, however, dismiss them with prejudice. "Where a district court cannot rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim, a *pro se* complaint should not be dismissed without granting leave to amend at least once." *Elder v. McCarthy*, 967 F.3d 113 (2d Cir. 2020). The Court will give Ortiz one more opportunity to flesh out her claims of being injured by a bench in August 2017 and of being improperly strip-searched and injured by handcuffs in September 2017 in light of the deficiencies noted in this Opinion.

### C. State Claims

*1. The* Thomas *Complaint*

With all of the federal claims in the *Thomas* complaint being dismissed, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining supplemental jurisdiction over the state law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Further, the Court is unable to exercise its diversity jurisdiction over these claims because there is at least one citizen of New York on both sides of the case — the plaintiffs on one side and all defendants except for Wilson-Haynes and Haynes on the other. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Universal*

---

[12] Additionally, the Court dismisses Ortiz's claims related to being verbally harassed on the bus to Rikers Island. *See Williams v. Dubray*, 557 F. App'x 84, 86 (2d Cir. 2014) (summary order) ("[V]erbal harassment, without more, is not actionable under § 1983.") (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)).

*Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)).

> 2. *The* Ortiz *Complaint*

Although Ortiz, being a citizen of New Jersey, is able to invoke the Court's diversity jurisdiction against the defendants — citizens of New York and California — any remaining state law claims must still be dismissed.

*First*, Ortiz's claims of defamation and fraud against Martin-Gibbons must be dismissed under the principle of *res judicata*. Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurr*y, 449 U.S. 90, 94 (1980). A defendant asserting *res judicata* must show that

> (1) the previous action involved an adjudication on the merits;
>
> (2) the previous action involved [the same adverse parties] or those in privity with them; and
>
> (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.

*Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (internal quotation marks and citation omitted). "A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014).

The November 2018 order by Justice Jaffe dismissing Ortiz's state court complaint against Martin-Gibbons, which alleged defamation and fraud through the filing of the September 2017 birth certificate that did not list Ortiz as J.O.'s mother, precludes Ortiz from bringing those same claims here. In that matter, Justice Jaffe's order was on the merits, finding that "[Ortiz] has no valid claim against [Martin-Gibbons]." Shepps Aff. ex. D at 2. The case indisputably involved both Ortiz and Martin-Gibbons. And the

claims raised in Ortiz's state court complaint are virtually identical to those raised in her complaint before this Court.  All state law claims against Martin-Gibbons are dismissed.

Second, a review of her complaint and briefing indicates that Ortiz makes no state law claims against any other defendant aside from those related to the custody of J.O. dismissed in Part IV above.  To the extent she does make any state law claims, they are alleged in a conclusory fashion and must be dismissed.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## VI.    CONCLUSION

The *Thomas* complaint, 19 Civ. 7695, is dismissed in its entirety.  The *Thomas* plaintiffs' state law claims are dismissed without prejudice subject to refiling in state court.  All claims asserted on J.O.'s behalf are dismissed without prejudice to them being brought again if and when he is represented by counsel.  All federal claims are dismissed with prejudice.

The *Ortiz* complaint, 19 Civ. 7887, is similarly dismissed in its entirety.  The Court's dismissal of Ortiz's claims regarding the custody of J.O. is without prejudice because the Court has dismissed those claims for lack of jurisdiction.  *See, e.g.*, *Charles v. Levitt*, 716 F. App'x 18, 22 (2d Cir. 2017).  Her federal claims against all defendants except for the City of New York are dismissed with prejudice.  Her federal claims against the City of New York for conduct occurring while detained at and being transported to Rikers Island are dismissed without prejudice.  All other claims against the City are dismissed with prejudice.  Finally, all state law claims are dismissed with prejudice.

In summary, all defendants' motions to dismiss are GRANTED in their entirety.[13] The *Thomas* plaintiffs may not file an amended complaint on these facts in this Court.

---

[13] Even though neither Montgomery, Wilson, nor Haynes have moved for dismissal in either case, the Court finds that dismissing the claims against them *sua sponte* is appropriate.  The Court may always dismiss claims *sua sponte* for lack of subject matter jurisdiction, and it may dismiss actions for failure to state a claim when "the claim clearly is frivolous in law and fact and [the] plaintiff has been given an opportunity to be heard."  *Klyumel v. United Nations*, No. 92 Civ. 4231 (PKL), 1993 WL 42708, at *2 n.1 (S.D.N.Y.

Ortiz may file a second amended complaint, but *only* regarding her claims against the City or other defendants for events related to her detention at Rikers.  Should Ortiz wish to pursue those claims — and *only* those claims — she is directed to file a second amended complaint by October 1, 2020.  The City is directed to answer or otherwise respond to any such complaint within 21 days of service.  The Clerk of Court is respectfully directed to termination the motions: Docs. 73, 74, 75, 76, and 82 in 19 Civ. 7695 and Docs. 74, 75, 76, 77, 82, and 101[14] in 19 Civ. 7887.  The Clerk is further directed to close 19 Civ. 7695 and terminate all defendants in 19 Civ. 7887 except for the City of New York.  The Clerk is further directed to note on the docket service of this Opinion and Order on the plaintiffs and Wilson-Haynes via mail sent by Chambers.

It is SO ORDERED.

Dated:    August 25, 2020
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

---

Feb. 17, 1993) (citing *Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988) and *Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.*, 850 F.2d 876 (2d Cir. 1988)).  As the claims against Wilson and Haynes are dismissed for identically the same reasons as those against Wilson-Haynes, the Court finds the plaintiffs have had sufficient opportunities to be heard on these points.  The same holds true for Ortiz's claim against Montgomery given the arguments raised by Ritter.

[14] The Court declines to exercise jurisdiction over Ortiz's petition for an injunction that interferes with ongoing custody proceedings before the New Jersey courts and so grants the Children Law Center's motion to dismiss that petition.  *See Younger v. Harris*, 401 U.S. 37 (1971).